IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARK'S AIRBOATS, INC.** | * | CIVIL ACTION NO. |
| | * | |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | JUDGE: |
| **RONALD J. THIBODAUX AND** | * | |
| **RONNIE'S AIRBOATS UNLIMITED,** | * | |
| **L.L.C.** | * | MAG. JUDGE: |
| | * | |
| Defendants | * | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

For its Complaint for Declaratory Judgment against Ronald J. Thibodaux and Ronnie's Airboats Unlimited, L.L.C., Plaintiff Mark's Airboats, Inc. alleges as follows:

**THE PARTIES**

1. Plaintiff Mark's Airboats, Inc. (hereinafter "Mark's Airboats") is a corporation duly organized and existing under the laws of the State of Louisiana having a domicile address at 1364 Chatsworth Rd., Franklin, Louisiana 70538.

2. Mark Joseph Robicheaux is President and Director of Plaintiff Mark's Airboats, Inc.

3. Defendant Ronald J. Thibodaux (hereinafter "Thibodaux") is, on information and belief, a Louisiana resident residing at 135 Boudreaux Rd., Franklin, Louisiana 70538.

4. Defendant Ronnie's Airboats Unlimited, L.L.C. (hereinafter "Ronnie's Airboats") is a limited liability company organized and existing under the laws of the State of Louisiana and having a domicile address at 9070 Hwy. 90, W. Frontage Rd., Centerville, Louisiana 70522.

1

5. Defendant Thibodaux, upon information and belief, is the owner and member of Defendant Ronnie's Airboats.

## JURISDICTION AND VENUE

6. The claims herein arise under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. § 100 et seq.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patents).

8. Personal jurisdiction over Defendants is established in this district because both entities reside in Louisiana and have made and continue to have continuous and systematic general business contacts in this district.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## BACKGROUND

10. Upon information and belief, Ronald J. Thibodaux is the owner of United Sates patent Nos. 8,187,045 and 8,262,423 (the "Patents-in-Suit" or "the '045 Patent and "the '423 Patent, respectively). These patents generally relate to a method for performing overhead work using air-propelled vessel with articulating member. Copies of the '045Patent and the '423 Patent are attached hereto as Exhibits 1 and 2.

11. On information and belief, Ronnie's Airboats is the exclusive licensee of the Patents-in-Suit.

12. Mark's Airboats is the exclusive licensee of a certain invention made by inventor Mark Joseph Robicheaux related to an airboat with a specially-designed propulsion unit, an application for which is currently pending in the U.S. Patent Office ("Robicheaux Property").

13. In the beginning of June 2012, one of Mark Airboats' long-standing customers, Oilfield Marine Contractors, L.L.C. who had bought two four-engine airboats, as well as several one-engine airboats from Mark Airboats, forwarded a letter, which Oilfield Marine Contractors, L.L.C. had received from Ted M. Anthony, Esq. of Babineux, Poche, Anthony & Slavich, informing of the existence of U.S. Patent No. 8,187,045 issued to Ronnie Thibodaux, a former employee of Robicheaux Airboats, Inc.. A copy of the letter from Ted M. Anthony Esq. is attached hereto as Exhibit 3.

14. Robicheaux Airboats, Inc. is a company, which Ray A. Robicheaux, father of Mark J. Robicheaux, owned, and where Ronnie Thibodaux worked from about 1991 to about 1994.

15. Upon information and belief, a similar letter was sent to Amphibious Marine in New Iberia, Louisiana.

16. Amphibious Marine bought two four-engine airboats and several single-engine airboats from Mark's Airboats.

17. Both Oilfield Marine and Amphibious Marine expressed a concern that they would be precluded from operating their equipment purchased from Mark's Airboats by Ronald Thibodaux or Ronnie's Airboats.

18. Both Oilfield Marine and Amphibious Marine requested Plaintiff, Mark's Airboats, Inc. to resolve this issue as soon as possible. Copies of the letters from Oilfield Marine and Amphibious Marine are attached hereto as a collective Exhibit 4.

19. Ray A. Robicheaux began a full time airboat manufacturing and repair business in or about 1975.

20. In the late 1970's, Ray Robicheaux began to rent airboats to companies for survey and seismographic work.

21. Ray's son, Mark Robicheaux, worked for Robicheaux Airboats, Inc. while he was still in high school and continued working for Robicheaux Airboats until 1986.

22. In the early 1980's, while working for Robicheaux Airboats, Inc., Ray Robicheaux and Mark Robicheaux built a multi-engine airboat, which was used for surveying and seismographic work. This airboat was used by Louisiana Land and Exploration Company.

23. In 1991, Robicheaux Airboats, Inc. employed defendant Ronald Thibodaux as the shop foreman and mechanic. Defendant Ronald Thibodaux worked for Robicheaux Airboats until about 1994. An Affidavit of Ray Robicheaux is attached hereto as Exhibit 5.

24. During early 1990's, Robicheaux Airboats, Inc. designed and built airboats with various mechanical devices installed at the upper surface of the deck, at the bow of the vessels. See, Exhibit 5.

25. The airboats that Ray Robicheaux built were vessels with wide hull and low draft; they were designed to work in shallow water.  See, Exhibit 5.

26.  The airboats, which Ray Robicheaux designed and built had one or more drive motors, a propeller connected to the motor and a rudder positioned aft of the propeller for steering the boat through the waterways. See, Exhibit 5.

27.  During the time when Ronald Thibodaux worked for Robicheaux Airboats, he was given an assignment to install articulating devices to the bow of vessels, such as a hydraulic punch, which would punch 20' deep holes to set dynamite for exploration work; a 10' – 20' water well drill that would drill up to 200' deep to set dynamite, and a

backhoe, which was used for digging pits at drill sites to accumulate water where no water was available at the surface. See Exhibit 5.

28. Upon information and belief, the mechanical devices included a hydraulic punch, which would punch 20' deep holes to set dynamite for exploration work; 10'-20' water well drill that would drill up to 200' deep to set dynamite; a backhoe and other articulating devices. See, Exhibit 5.

29. Upon information and belief, Ray Robicheaux instructed and supervised defendant Ronald Thibodaux as they installed these mechanical devices on the boats. Attached as Exhibits 6 and 7 are two photographs showing defendant Ronald Thibodaux working on the backhoe installation on one of Robicheaux's airboats. These photographs were taken in the early 90-s when defendant Ronald Thibodaux worked for Robicheaux Airboats, Inc.

30. Upon information and belief, the backhoe installed on the vessel manufactured by Robicheaux Airboats was purchased at Northern Hydraulics, Inc. of Great Falls, Montana. See, Exhibit 5.

31. Upon information and belief, at the direction of Ray Robicheaux, the backhoe and installation gear were modified to accommodate flat bottom airboats. See, Exhibit 5.

32. As discussed in Robicheaux's Affidavit, Exhibit 5, the backhoe that Robicheaux installed on the Robicheaux's airboats had a two-part retractable articulated arm; the first part or boom, was connected to a base or kin-post secured to the deck. The base was rotatable. The second part or dipper was pivotally attached to a distant end of the boom, pivoting about a horizontal pivot axis. A motor, which could be a hydraulic motor, was

connected to the articulated arm. The motor moved the arm about horizontal and vertical axes. The articulated arm could be retracted and extended from the boat hull.

33. Upon information and belief, as the technology improved and more powerful engines became available, Ray Robicheaux had many discussions with defendant Ronald Thibodaux about installing other articulating devices on the bow of the vessels. See, Exhibit 5.

34. In the 1990's and early 2000's, other boat builders have employed articulating equipment on flat-bottom boats and other vessels. Photographs showing such boats and vessels are attached hereto as a collective Exhibit 8.

35. On January 19, 2006, defendant Thibodaux caused a provisional patent application to be filed with the United States Patent and Trademark Office. That application was accorded application No. 60/760,070 ("the '070 provisional application").

36. A non-provisional patent application of Ronald Thibodaux (based on provisional application No. 60/760,070) was filed on January 19, 2007 and was accorded Serial No. 11/655,719.

37. As part of the patent application filing, Thibodaux submitted a Declaration to the United States Patent Office acknowledging his duty to disclose to the Patent Office "information which is material to patentability as defined in 37 C.F.R. 1.56." A copy of Thibodaux's Declaration is attached hereto as Exhibit 9.

38. On March 18, 2008, Thibodaux filed "Information Disclosure Statement" for his application Serial No. 11/655,719, listing several patents known to Thibodaux as "prior art." A copy of this Information Disclosure Statement is attached hereto as Exhibit 10.

39. The March 18, 2008 Information Disclosure Statement makes no mention of prior art boats and vessels employing articulating devices, such as the devices installed by Thibodaux under the direction of Ray Robicheaux during early 1990's.

40. On May 29, 2012, the U.S. Patent Office issued patent No. 8.187,045, which was based on Thibodaux's application Serial No. 11/655,719.

41. The information about Ray Robicheaux's designs and boats was material to patentability of the '045 Patent but never disclosed to the U.S. Patent Office.

42. On March 9, 2011, Ronald Thibodaux filed a second application for "Method for Performing Overhead Work Using Air-Propelled Vessel with Articulating Member" in the U.S. Patent Office. The second application was accorded application No. 12/932,922.

43. U.S. application Serial No. 12/932,922 of Thibodaux is a continuation of application Serial No. 11/655,719 (patent No. 8,187,045).

44. As part of the second patent application filing, Thibodaux submitted a Declaration to the United States Patent Office acknowledging his duty to disclose to the Patent Office "information which is material to patentability as defined in 37 C.F.R. §1.56." A copy of Thibodaux's Declaration for application Serial No. 12/932,922 is attached hereto as Exhibit 11.

45. Thibodaux did not file an Information Disclosure Statement in his second application No. 12/932,922 and made no mention of prior art boats and vessels employing articulating devices, such as the devices installed by Thibodaux under the direction of Ray Robicheaux during early 1990's.

46. The Patents-in-suit disclose and claim wide-hull, low-draft vessels with articulating booms that are either anticipated by, or are obvious in view of the prior art vessels built and leased and or sold by Robicheaux's Airboats in the early 1990's.

47. The airboats built by Plaintiff Mark's Airboats and sold to Oilfield Marine Contractors, L.L.C. and Amphibious Marine do not infringe on any claim of either the '045 Patent or the '423 Patent.

48. The letter that the Defendants caused sent to the Plaintiff's customers creates a real and immediate controversy that could only be resolved by this Court.

## COUNT ONE

## INEQUITABLE CONDUCT IN PROSECUTING THE '045 AND THE '423 PATENTS

49. Mark's Airboats realleges and incorporates by reference the allegations set forth in Paragraphs 1-47 as though fully set forth herein.

50. All of the patents-in-suit were filed and prosecuted by attorney Ted M. Anthony of the firm Babineaux, Poche, Anthony & Slavich, L.L.C. The '045 Patent claims the benefit of the '070 provisional application.

51. Neither attorney Anthony nor defendant Thibodaux disclosed the prior art of Robicheaux Airboats', which are very much similar to the devices covered by the claims of the Patents-in-Suit, during the prosecution of applications for the '045 Patent and the '423 Patent.

52. The Robicheaux airboats were known to Thibodaux at the time and known by him to be material to at least one pending claim of the first patent application and the second patent application, but were not disclosed in connection with those applications or otherwise provided to the examiner of those applications.

53. No prior art was cited by Thibodaux or by attorney Anthony in the application for the '423 Patent.

54. This undisclosed prior art was extremely material to the applications for the '045 Patent and the '423 Patent and, had it been provided to the examiner, would have been cited as anticipating prior art against many of the patent application claims.

55. Upon information and belief based in part upon the facts recited above, defendant Thibodaux intended to deceive the U.S. Patent Office in connection with his prosecution of the applications for the '045 Patent and for the '423 Patent by withholding from the U.S. patent examiner assigned to that application certain prior art devices known to Thibodaux and known by him to be material to the patentability of the claims pending in the application for the '045 Patent and the '423 Patent.

56. As a result, the '045 Patent and the '423 Patent are unenforceable as a matter of law, as is any patent descending from either one of them.

## COUNT TWO

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PATENTS-IN-SUIT

57. Plaintiff adopts by reference the allegations of the foregoing paragraphs as if fully restated herein.

58. Defendants have created an actual and justiciable controversy between themselves and Plaintiff regarding whether Plaintiff's buyers have infringed any valid claim of the '045 Patent or the '423 Patent.

59. Neither Plaintiff nor its customers infringe, and has not infringed directly, indirectly, willfully or otherwise, any valid claim of the '045 Patent or the '423 Patent.

60. One or more of the claims of the '045 Patent and the '423 Patent are invalid for failure to comply with one or more of the conditions of patentability and/or requirements specified in 35 U.S.C. §§ 102 and/or 103 and/or 112.

61. A judicial declaration of noninfringement of the '045 Patent and the '423 Patent is necessary and appropriate to resolve this controversy.

62. A judicial declaration of invalidity of the '045 Patent and the '423 Patent claims is necessary and appropriate to resolve this controversy.

### COUNT THREE

### INTENTIONAL INTERFERENCE WITH CONTRACT

63. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1-62 as though fully set forth herein.

64. On information and belief, Defendants intentionally and improperly interfered with contracts between Plaintiff and its customers by, *inter alia*, contacting these customers and informing Plaintiff's customers about the existence of the Defendants' competing equipment.

65. Defendants' illegal and improper acts in interfering have caused and continue to cause damages to Plaintiff for which Defendants are liable. Defendants' interference is taking away Plaintiff's customer opportunities, and has caused damage to Plaintiff's relationships with its customers.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of judgment:

a. For a declaration that U.S. Patent Nos. 8,187,045 and 8,262,423 are invalid and unenforceable;

b. Declaring that neither Plaintiff, nor its agents, employees or customers have infringed any valid claim of the Thibodaux Patents;

c. Enjoining Defendants, their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, and their parents, successors, and assigns, from directly or indirectly charging infringement, or instituting any action for infringement of the '045 Patent or the '423 Patent against Plaintiff and/or any of its affiliates, customers, agents, licensees, or potential customers or licensees, in connection with any product accused of infringement in this action;

d. For damages, in an amount to be determined at trial, against the Defendants;

e. Declaration that this case is exceptional within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its attorneys' fees, costs, and expenses that he incurs in connection with this action;

f. That this Court enter a final judgment and order in Plaintiff's favor and against Defendants;

g. For pre-judgment and post-judgment interest, as applicable, on all amounts awarded as damages, in the highest amount permitted by law, from the date of entry of judgment until paid in full;

h. For an injunction precluding the Defendants and their officers, agents, servants, employees, attorneys, and any other person acting in concert or participation with such person, who receive actual notice of the order or judgment, from inducing the Plaintiff's customers and potential customers to purchase competing equipment from the Defendants; and

i. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests that all issues so triable be tried by and before a jury.

                Respectfully submitted,

                /s/Thomas S. Keaty
                KEATY Law Firm, L.L.C.
                Thomas S. Keaty - 7666, T.A.
                365 Canal Street
                Suite 2410
                New Orleans, Louisiana 70130
                (504) 524-2100
                Attorney for Plaintiff

VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF**

On this day, appeared before me, the undersigned notary public, Mark J. Robicheaux, President and Director of Plaintiff, Mark's Airboats, Inc. and after I administered an oath to him, upon his oath, he said he read the Complaint, and the facts stated in it are within his personal knowledge and are true and correct

_____
Mark Joseph Robicheaux

Sworn to and subscribed before me on this 4th day of February, 2013.

_____
Notary Public

SHERRY S. BISHOP
NOTARY PUBLIC
NOTARY NO. 011265

1